893 P.2d 801

ADA COUNTY, a political subdivision of the state of Idaho, Plaintiff–Respondent,

v.

David R. GIBSON, Defendant–Appellant.

No. 20791.

Court of Appeals of Idaho.

Feb. 8, 1995.

Rehearing Denied March 27, 1995.

Petition for Review Denied May 17, 1995.

Vernon K. Smith, Jr., Boise, for appellant.

Greg H. Bower, Ada County Pros. Atty., David H. Bieter, Deputy Pros. Atty. (argued), Boise, for respondent.

LANSING, Judge.

This is an appeal from an order of the district court holding the defendant David R. Gibson in contempt of court for violating a permanent injunction. The injunction prohibited Gibson from storing certain items on his land in violation of an Ada County ordinance, which proscribed use of the land for a junkyard. The contempt order fined Gibson $500 but suspended the fine and provided that it would be "quashed" if Gibson would purge himself within thirty days of the contempt by removing certain items from his land. Gibson appeals, asserting that the order holding him in contempt should be reversed because he is not operating a junkyard and his actions, therefore, do not violate the ordinance. We conclude that Gibson was not using his property as a junkyard within the meaning of the zoning ordinance. Therefore, we reverse the contempt order.

## I. FACTS AND PROCEDURAL BACKGROUND

In 1991, David Gibson acquired rights to a parcel of real property in Ada County with the apparent purpose of operating a tree and shrub nursery.[1] The condition of the soil on this parcel is such, however, that prior to its use for growing nursery stock large amounts of compost must be added to the soil. Toward this end, Gibson has accumulated on the parcel large amounts of organic material.[2] In addition, he has acquired and stored on the premises numerous pieces of both operable and inoperable equipment, large amounts of scrap metal and salvaged wood, several out-buildings, bales of cardboard and paper, rolls of wire fencing, hundreds of five-gallon plastic buckets, at least two inoperative refrigerators and other kitchen appliances, a mobile home, numerous fifty-five gallon barrels, a large fuel tank, a flat bed trailer, wooden pallets, steel tubing, plastic tubing, used tires, wheels, automotive parts including an engine and transmission, and other items too numerous to list. Gibson intends to utilize many of these items in

constructing an on-site composting machine that will be used to improve the soil condition.

Gibson's parcel lies within Ada County's rural transition (RT) zone, where permitted uses include plant nurseries. In 1992, the County sought a permanent injunction against Gibson, alleging that his activities violated Ada County Zoning Ordinance 8–4C–5 which prohibits junkyards in areas zoned RT. Gibson, acting pro se, argued that his actions did not constitute the operation of a junkyard since he was not in the business of buying and selling used or salvaged materials. The district court granted a permanent injunction, apparently finding that Gibson's actions constituted the operation of a "junkyard" as the term is defined in the Ada County ordinances because Gibson was storing salvaged materials on his premises. The court therefore ordered that Gibson be enjoined from "continuing to store compost equipment, scrap and salvage materials, and mobile homes, or other structures" on the premises. The injunction allowed Gibson six weeks within which to remove the designated items.

Subsequently, the County moved for an order holding Gibson in contempt of court for violating the permanent injunction. At an evidentiary hearing on September 28, 1992, the district court initially found cause to hold Gibson in contempt but continued the matter to a later date. During the period of the continuance, Gibson and the County entered into a stipulation that reframed the factual and legal issues for the district court. The parties stipulated that Gibson "intends to use all of the articles and items located on this property in conjunction with a permitted use of the property under Ada County Zoning Ordinance in pursuit of an agricultural purpose." They further stipulated that the sole legal issue before the court was "whether the articles and items of personal property on Mr. Gibson's premises constitutes [sic] a violation of the Ada County Zoning Ordinance or not when he has the present intent to

---

1. Gibson originally leased the land from the owner with an option to purchase. Gibson subsequently purchased the land.

2. These organic materials include leaves and grass clippings from the Ada County Highway District and private lawn care companies and are not at issue in this case.

utilize the items in furtherance of a permitted and lawful use." The district court accepted this stipulation even though it had already decided the same issue in its previous order creating the injunction. The parties and the district court thus reopened the legal issue of whether Gibson was in violation of the ordinance and essentially treated the contempt proceeding as a motion to reconsider the injunction.

The district court issued a memorandum decision in which it found that Gibson's storage of material on the premises constituted the operation of a junkyard. The court therefore found that Gibson was in contempt of court for violating the earlier injunction and fined him $500. Gibson now appeals from that order, arguing that he is not operating a "junkyard" as that term is used in the Ada County zoning ordinances.

The dispositive issue presented to this Court is whether the term "junkyard," as defined in Ada County Ordinance 8–2–1, refers only to commercial enterprises engaged in the storage, sale or other handling of waste, discarded or salvaged items, or whether the term encompasses the storage of salvaged items incidental to a permitted use or intended for a future, permitted use.

## II. ANALYSIS

Interpretation of an ordinance, like construction of a statute, is an issue of law. Therefore, this Court exercises free review of the district court's decision. *See State v. Nelson,* 119 Idaho 444, 446, 807 P.2d 1282, 1284 (Ct.App.1991).

It is axiomatic that the objective in interpreting a statute or ordinance is to derive the intent of the legislative body that adopted the act. *Ada County Assessor v. Roman Catholic Diocese of Boise,* 123 Idaho 425, 428, 849 P.2d 98, 101 (1993); *Cox v. Department of Insurance,* 121 Idaho 143, 146, 823 P.2d 177, 180 (Ct.App.1991). Any such analysis begins with the literal language of the enactment. *Matter of Permit No. 36–7200,* 121 Idaho 819, 823, 828 P.2d 848, 852 (1992); *Local 1494 of Intern. Ass'n of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978); *Messen-ger v. Burns,* 86 Idaho 26, 29–30, 382 P.2d 913, 915 (1963). Where the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction. *Ada County v. Roman Catholic Diocese,* 123 Idaho at 428, 849 P.2d at 101; *Matter of Permit No. 36–7200,* 121 Idaho at 823, 828 P.2d at 852; *Sherwood v. Carter,* 119 Idaho 246, 254, 805 P.2d 452, 460 (1991). Where the language of a statute or ordinance is ambiguous, however, the court looks to rules of construction for guidance, *Lawless v. Davis,* 98 Idaho 175, 560 P.2d 497 (1977), and may consider the reasonableness of proposed interpretations. *Umphrey v. Sprinkel,* 106 Idaho 700, 706, 682 P.2d 1247, 1253 (1983). Constructions that would lead to absurd or unreasonably harsh results are disfavored. *Gavica v. Hanson,* 101 Idaho 58, 60, 608 P.2d 861, 863 (1980); *Lawless,* 98 Idaho at 177, 560 P.2d at 499.

Ada County Ordinance 8–4C–5 prohibits use of land within an RT zone as a junkyard. Ordinance 8–2–1 defines "junkyard" as:

> An outdoor space where waste, discarded or salvaged materials are bought, sold, exchanged, baled, packed, disassembled, stored or handled, housewrecking yards, used lumber yards and places or yards for storage of salvaged housewrecking and structural steel materials and equipment; but not including such places where such uses are conducted entirely within a completely enclosed building, such as pawn shops and establishments for the sale, purchase or storage of used furniture and household equipment or for used cars in operable condition, or salvaged materials incidental to manufacturing operations.

Our threshold task is to determine whether an ambiguity exists within this definition.

An ordinance is ambiguous where reasonable minds might differ or be uncertain as to its meaning. *State v. Browning,* 123 Idaho 748, 750, 852 P.2d 500, 502 (Ct. App.1993). Ambiguity is not established, however, merely because the parties present differing interpretations to the court. *Matter of Permit No. 36–7200,* 121 Idaho at 823, 828 P.2d at 852.

The County contends that inclusion of locations where salvaged materials are "stored or handled" in the definition of junkyard makes the definition unambiguously applicable to any and all outdoor storage of salvaged materials. Clearly, if we were to focus on these words alone, to the exclusion of the remainder of the ordinance, the County's position would be well-taken. We do not, however, limit our review of a statute or ordinance to individual words taken out of context. Rather, we must read the enactment as a whole and consider "the whole act and every word therein, lending substance and meaning to the provisions." *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Ada County,* 123 Idaho 410, 415, 849 P.2d 83, 88 (1993). Looking beyond the words "stored or handled," virtually all of the remainder of this 87-word definition of junkyard refers to commercial uses. The terms "stored or handled" upon which the County relies follow the terms "bought, sold, exchanged, baled, packed," all of which are verbs indicating commercial handling or transactions. Additionally, the operations specifically enumerated in the definition of junkyard—"housewrecking yards, used lumber yards and places or yards for storage of salvaged housewrecking and structural steel materials and equipment"—all refer to business enterprises. Finally, those identified activities which would be prohibited but for the fact that they are carried on within enclosed buildings or are expressly exempted—"pawn shops, and establishments for the sale, purchase or storage of used furniture and household equipment or for used cars in operable condition, or salvaged materials incidental to manufacturing operations"—are all commercial activities.

Thus, although the ordinance can reasonably be read, as the County submits, to prohibit any storage of salvaged items out-of-doors, other portions of the ordinance substantiate Gibson's argument that the definition is intended to encompass only the operation of businesses that handle or trade in used or salvaged materials. We, therefore, conclude that the ordinance is ambiguous as to whether it includes all outdoor storage of salvaged materials or only businesses that in some fashion transact in "junk."

Where an ordinance is ambiguous, the intent of the drafters may be ascertained by considering, first, the express language and, in addition, the context in which the language is used, the evils to be remedied and the objects in view. *Local 1494 of International Ass'n of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 639, 586 P.2d 1346, 1355 (1978).

As noted above, most of the language within the ordinance indicates that the definitional target is commercial enterprises. The ordinance begins by defining "junkyard" as "an outdoor space where waste, discarded or salvaged materials are *bought, sold, exchanged, baled, packed, ....*" These verbs describe commercial activity, and the terms "stored or handled," when read in context with the preceding terms, may be intended to refer to commercial storage and handling. Consideration of the *common* meaning of the term "junkyard" supports the view that the ordinance's drafters chose that term with the intent to refer to commercial enterprises. Webster's New World Dictionary (Second College Ed.1970) defines "junkyard" as: "a place where old metal, paper, etc. is kept, sorted, *and sold* or old cars are junked." (Emphasis added.) The Random House Dictionary of the English Language (1st ed.1987) defines the term as, "a yard for the collection, storage, *and resale* of junk." (Emphasis added). These dictionary definitions indicate that a junkyard is a business enterprise.

Next we consider the context and object of the ordinance. The purpose of Ada County Zoning Ordinances 8-4C-1 through 8-4C-5 is to identify those uses that are permitted in the RT zone and those that are not. "Use" is defined by Ordinance 8-2-1 as: "The *purpose* for which land or a building thereon is designed, arranged or intended, or for which it is occupied or maintained, let or leased." (Emphasis added.) A "use," therefore, means the affirmative and intended purpose to which the land is dedicated. A use is not merely the appearance or condition in which a given parcel is maintained. This definition of "use" indicates that the definition of "junk-

yard" as a use refers to occupancies that have as a focal purpose the handling of junk and does not refer to the storage of salvaged items that is merely incidental to some other purpose of the occupancy—such as development of a nursery. Although it may be permissible for Ada County to establish standards governing the appearance or condition of properties for aesthetic, health or safety purposes, that does not appear to be the intent of the ordinance in question, which regulates uses, not condition or appearance. Gibson is correct, therefore, when he asserts that the subjective appearance of his property as being cluttered, littered or otherwise "junky" does not establish its "use." Rather, the intended purpose for which the land is occupied identifies the use.

Finally, we must consider the general rule that because zoning laws are in derogation of common law rights of free ownership and use of property, where more than one reasonable interpretation is possible, the interpretation that places the least restriction on use of property is favored. *Schwartz v. Hamden Planning & Zoning Commission*, 208 Conn. 146, 543 A.2d 1339 (1988); *Oak Park Trust & Savings Bank v. Village of Elmwood Park*, 113 Ill.App.2d 121, 251 N.E.2d 788 (1969); *Smith v. Howard*, 407 S.W.2d 139 (Ky.1966); *LaPointe v. City of Saco*, 419 A.2d 1013 (Me.1980); *Cohen v. Dane Cty. Bd. of Adjustment*, 74 Wis.2d 87, 246 N.W.2d 112 (1976); 3A Norman J. Singer, SOUTHERLAND'S STATUTES AND STATUTORY CONSTRUCTION § 75.07 at 439 (5th ed. 1992). In addition, when choosing between alternative constructions of a statute or ordinance, unnecessarily harsh consequences are to be avoided. *Higginson v. Westergard*, 100 Idaho 687, 691, 604 P.2d 51, 55 (1979).

These rules of construction favor Gibson's interpretation of the definition of "junkyard." Under the County's view, the ordinance would preclude the outdoor storage of even one item of salvaged material on any property in the RT zone or any other zone where junkyards are prohibited. Any farmer or homeowner in such zones who stored outside even a small quantity of salvaged supplies or equipment parts, used fencing materials, scrap metal or used lumber for later use would be in violation of the ordinance. The County's interpretation would, however, allow the outdoor storage of newly manufactured items of the same character or appearance since they are not "salvaged." Such an interpretation leads to inconsistent and unreasonably harsh results and places a significant restraint on land use, particularly for agricultural areas.

■ Having considered the literal words of the ordinance and the foregoing standards for construction of ambiguous ordinances, we conclude that Ada County Zoning Ordinance 8–2–1 was intended to define "junkyard" so as to include only business operations with the primary purpose of handling or conducting transactions in used, discarded, or salvaged materials. Accordingly, Gibson's storage of salvaged items incidental to his construction of an on-site composting machine and eventual tree and shrub nursery does not constitute a use of the premises as a "junkyard." The district court therefore erred in holding Gibson to be in violation of the ordinance and in contempt of court.

Our interpretation of the ordinance makes it unnecessary for us to address other issues raised by the parties. The order of the district court holding Gibson in contempt is reversed. Costs to appellant. No attorney fees are awarded on appeal.

WALTERS, C.J., concurs.

PERRY, Judge, dissenting.

I respectfully dissent. I must disagree with the majority's holding that the ordinance is ambiguous and their interpretation, as a matter of law, that the ordinance applies only to business operations. I would affirm the actions of the district court.