NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 14 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

GARY BUTLER,

Plaintiff-Appellant,

v.

NORTH AMERICAN CAPACITY
INSURANCE COMPANY;
INTERMOUNTAIN CLAIMS, an Idaho
Corporation,

Defendants-Appellees.

No.    14-35131

D.C. No. 2:12-cv-00027-CSO

MEMORANDUM [*]

Appeal from the United States District Court
for the District of Montana
Carolyn S. Ostby, Magistrate Judge, Presiding

Argued and Submitted December 6, 2016
Seattle, Washington

Before:  McKEOWN, TALLMAN, and CHRISTEN, Circuit Judges.

The district court granted summary judgment for North American Capacity

Insurance Company ("North American") and Intermountain Claims

("Intermountain"), concluding that Gary Butler's claims are barred under Idaho

law, and that Idaho law applies because Idaho has the most significant relationship

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

with the parties and the underlying occurrence.[1]  Butler appeals this determination

and, in the alternative, requests certification of the choice-of-law issue to the

Montana Supreme Court.  We have jurisdiction under 28 U.S.C. § 1291, and we

review a decision concerning choice of law de novo.  *Mortensen v. Bresnan

Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013).  For the reasons below, we

affirm the grant of summary judgment and deny Butler's request.

"When sitting in diversity, we apply the choice-of-law rules of the forum

state."  *Coneff v. AT & T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012).  We

therefore apply the most significant relationship analysis described in the

Restatement (Second) of Conflict of Laws (1971) (the "Restatement").  *See

Phillips v. Gen. Motors Corp.*, 995 P.2d 1002, 1007 (Mont. 2000).  Three sections

of the Restatement are implicated in this case: sections 148(2), 145(2), and 6(2).

We conclude that the section 148(2) contacts, which apply to cases

involving claims of fraud and misrepresentation, are evenly balanced.  On the one

hand, contacts (a) and (d) weigh in favor of Montana law.  The district court

properly concluded that contact (a) favors Montana law because Butler's reliance

took place in Montana.  We also conclude that contact (d) slightly favors Montana

law because Butler is a Montana resident, and we give more weight to the

---

[1] The parties are familiar with the facts of this case, and we do not repeat them here except as necessary to our disposition.

residence or domicil of the plaintiff under this contact. *See* Restatement § 148 cmt. i. On the other hand, contact (b) favors Idaho law because the four representations were first received in Idaho,[2] *see id.* cmt. g,[3] as does contact (c) because the representations were all made from Idaho, *see id.* cmt. h. Contact (e) does not apply in this case because the parties' dispute does not involve a "tangible thing."[4] Finally, to the extent that contact (f) applies, we conclude that it favors

[2] Butler suggests, and the dissent agrees, that the most important representation was that $50,000 was a fair settlement offer. We disagree. When asked how Hoffman misrepresented himself, Butler did not mention the final $50,000 offer. Instead, Butler testified that four earlier statements "stuck in [his] craw," including that (1) Hoffman was a "neutral party," (2) Butler would likely receive a lot less than $250,000 for his injury, (3) pursuing a claim would tie Butler up in foreign courts, and (4) Butler misused the cargo net. That Hoffman later made due on his promise that Butler would receive a lot less than $250,000 does not change our conclusion that most of the representations were received in Idaho, and a lesser portion, some duplicative of earlier statements received in Idaho, were received over the phone in Montana. *See id.* cmt. h.

[3] The dissent correctly points out that the place where a plaintiff first receives representations "is not so important a contact as is the place where the plaintiff acted in reliance on the defendant's representations." *Id.* cmt. g. However, no single contact is determinative under section 148(2)—including the place of reliance. In this case, the place of reliance must be weighed against other important contacts including "[t]he place where the defendant made his false representations . . . [which] is as important a contact in the selection of the law governing actions for fraud and misrepresentation as is the place of the defendant's conduct in the case of injuries to persons or tangible things," *id.* cmt. c, and the place where the plaintiff first received the representations, which is as important as the place where the representations were first made, *id.* cmt. g.

[4] The dissent attempts to characterize Butler's release of claims as a tangible thing, but the Restatement explains that only "*[s]ometimes*, [will] plaintiff's reliance . . . consist in receiving from the defendant, or relinquishing to him, some tangible thing, as by way of purchase or sale." *Id.* cmt. c (emphasis added). Butler's case does not involve a tangible thing. Instead, it involves a settlement agreement

neither state because, under the terms of the settlement agreement, Butler was to refrain from filing suit anywhere—not only in Montana.[5] Giving due consideration to the relative importance of each contact, we conclude that the section 148(2) contacts are evenly balanced.

Next, we consider the general tort contacts described in section 145(2). This section adds one additional contact to those discussed under section 148(2), and that contact is the center of the relationship. Restatement § 145(2)(d). We conclude that the relationship between Butler, North American, and Intermountain was centered in Idaho. Butler originally bought the cargo net in Idaho, he was injured in Idaho, and he later returned to Idaho to confront the manager of the Idaho store. Although these underlying events did not involve North American and Intermountain at the time, they eventually brought the parties together in this suit. The Idaho store owner contacted North American, which contacted Intermountain, which assigned insurance adjuster Scott Hoffman, who arranged a meeting with Butler at his office in Lewiston, Idaho. Because the other section 148(2) contacts are evenly balanced, we conclude that the center of the relationship tips the scale in favor of Idaho law in this case.

---

releasing intangible claims. *See also id.* cmt. f (explaining that relinquished assets "may be tangible *or* intangible") (emphasis added).

[5] The dissent argues that Butler rendered performance in Montana because that is where he signed the release of claims. We do not agree that Butler's act of signing a contract constitutes his performance under that contract.

Finally, we consider section 6(2), which describes general principles potentially applicable in any choice-of-law analysis under the Restatement. As was the case in *Phillips*, we conclude that only (b) and (c) are applicable here. *See* 995 P.2d at 1009. According to these principles, we consider both "the relevant policies of the forum state [and] the relevant policies of other interested states and the relative interests of those states." Restatement § 6(b)–(c). In this case, Montana and Idaho have different policies—most clearly demonstrated by the fact that Butler has a claim under Montana law, but not under Idaho law. Moreover, each state has an interest in applying its own law because (1) Butler is a Montana resident, and Montana has established a strong consumer protection policy in order to protect its own residents; and (2) Intermountain is registered and based in Idaho, and Idaho has an interest in protecting its insurance companies and fostering business. *See Cox v. Dep't of Ins.*, 823 P.2d 177, 180 (Idaho Ct. App. 1991). Finally, this is not the hypothetical case described in *Phillips* where "all of the relevant contacts are in [Montana] except the location of the manufacturer." 995 P.2d at 1012. Butler has independent ties to the state of Idaho, Intermountain's principle place of business is in Idaho, and Idaho is the center of the parties' relationship. Since both Montana and Idaho have a direct and legitimate interest in applying their law, we conclude that the section 6(2) principles are neutral.

Our dissenting colleague argues that the district court erred by refusing to consider the "justified expectations" of the parties under section (6)(2)(d). We disagree. The Restatement explains that the protection of justified expectations "is of lesser importance in the field of torts" because tort injuries are typically unintentional, and because "a number of policies [applicable in tort cases], such as the deterrence of tortious conduct and the provision of compensation for the injured victim . . . are likely to point in different directions in situations where the important elements of an occurrence are divided among two or more states." Restatement § 145 cmt. b. This is precisely what has occurred in this case: The representations were made in Idaho, and Idaho's corporate protection policy points to Idaho law, but the representations were relied upon in Montana, and Montana's consumer protection policy points to Montana law.

To the extent that the parties did give advance thought to the legal consequences of their negotiations, they had the ability to include a choice-of-law provision in their settlement contract. *See* Restatement § 6 cmt. g. But when the parties do not specify that the law of a particular state will govern their relationship, "tort cases generally do not involve justified expectations." *Phillips*, 995 P.2d at 1013. For this reason, North American and Intermountain had no justified expectation that Idaho law would apply, and Butler had no justified expectation that Montana law would apply. Rather, the only justified expectation

6

in this case is that the law of the state with the most significant relationship to the parties and the underlying occurrence applies. We agree with the district court and conclude that state is Idaho.

We also conclude that the choice-of-law issue is not suitable for certification because there is a controlling decision instructing courts to apply the Restatement. *See* Mont. R. App. P. 15(3)(b); *Phillips*, 995 P.2d at 1007. The mere fact that this case involves section 148, as opposed to a more familiar section, is insufficient to overcome the presumption against certifying a question after a federal district court has issued a decision. *See Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008). We therefore deny Butler's request for certification.

The parties shall bear their own costs of appeal.

**AFFIRMED.**

*Butler v. No. American Capacity Insurance Co.*, 14-35131

CHRISTEN, Circuit Judge, dissenting:

Montana resident Gary Butler lost his eye in November of 2006 while loading a flatbed truck in Idaho. A cargo net made from bungee cord detached from a hook and recoiled; one end struck Butler and permanently blinded his right eye. About six months later, Butler received a call from an Intermountain Claims adjuster, Scott Hoffman, who said he was "strictly a neutral party" and invited Butler to meet with him at Hoffman's Idaho office.

Hoffman and Butler met just one time in Idaho, but they had several telephone conversations in the following months. The adjuster eventually conveyed a $50,000 settlement offer to Butler in Montana and told Butler that it was "a very fair offer." According to Butler, Hoffman said that if Butler wanted to pursue a lawsuit, it would be "tied up in foreign courts" because the net was manufactured in Canada. Butler ultimately accepted the offer from his home in Montana, and later executed the settlement agreement and received the settlement payment there.

Some time later, Butler sued North American and Intermountain. He alleged that the defendants made material misrepresentations during the settlement negotiations. Butler testified at his deposition that he initially trusted Hoffman but

1

later came to believe that Hoffman had misrepresented: (1) the value of his eye injury; (2) that Hoffman was a neutral party; (3) that Butler could be drawn into foreign courts if he filed a personal injury action; and (4) that Butler caused the accident by using the net improperly.

**Montana's Choice of Law Rule**

Federal courts sitting in diversity apply the forum state's choice-of-law rules to determine the controlling substantive state law. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 1008 (9th Cir. 2005). Montana follows the Restatement (Second) of Conflict of Laws (Restatement), *Phillips v. General Motors Corp.*, 995 P.2d 1002 (Mont. 2000). For tort claims, Montana looks to the Restatement's tort principles set out in section 145, together with any more specific rules that may apply. *Id.* Several of the general tort factors identified in section 145 overlap with section 148, which specifically addresses misrepresentation claims, but one signpost in section 145(1) is not to be missed: "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, *with respect to that issue*, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." This provision is critical because it makes clear that the choice-of-law analysis in this case must focus on the state with the most significant relationship to the negotiations between

2

Butler, North American, and Intermountain regarding the settlement of Butler's potential personal injury and product liability claims. One of the mistakes that crept into the district court's analysis was its shift from consideration of the *negotiation and settlement* of Butler's injury-related claims as the relevant "occurrence," to discussion of the injury-related claims themselves.

**Restatement Section 148**

Section 148 specifically applies to claims for pecuniary harm arising from reliance on misrepresentations, and its six factors weigh in favor of applying Montana law to Butler's claims.

First, section 148(2)(a) requires consideration of the *place of reliance*. Butler was in Montana when he relied on Hoffman's representations by accepting the $50,000 offer, and he was in Montana when he executed the settlement agreement. The place of reliance favors application of Montana law.

Section 148(2)(b) requires consideration of the *place where plaintiff received the defendant's representations*. Hoffman called Butler in Montana and arranged to meet him in Idaho, the only face-to-face meeting the two men had. As explained, Butler alleges that Hoffman made misrepresentations during their meeting, and he testified that some of the misrepresentations were repeated when the two telephonically discussed the claim over the course of the next several

3

months. Though Butler participated in those calls from his home in Montana and Hoffman participated in them from Idaho, the district court decided that section 148(2)(b) points toward application of Idaho law because comment g directs that 148(2)(b) should be understood to refer to the place where the representations were *first* communicated to the plaintiff. There are two problems with this reasoning. First, it fails to account for Hoffman's November 2007 telephone call to Butler to relay the $50,000 settlement offer and his assurance that it was "a very fair offer." Like all of the conversations that took place after the single meeting at Hoffman's Idaho office, Butler was in Montana when he first received the settlement offer and Hoffman's alleged endorsement of it. Second, the district court only called out the first part of comment g, which directs the court to look to the place where representations were first communicated to the plaintiff. The court left off the last portion of comment g, which goes on to caution that "*this place [where plaintiff first received the representations] is not so important a contact as is the place where the plaintiff acted in reliance on the defendant's representations*." Because Butler definitely acted in reliance on Hoffman's statements at his home in Montana, 148(2)(b) actually weighs in favor of Montana, not Idaho.

A separate reason it was error to decide that section 148(2)(b) weighs in favor of Idaho law is that a significant representation—Hoffman's endorsement of

4

the settlement offer as fair—was *only* conveyed to Butler when he was in Montana.

Section 148(2)(c) requires consideration of the *place where the defendant made the representations*. Hoffman made the alleged misrepresentations in Idaho. Other courts have recognized that the physical location of the actor is of diminished importance when some of the representations are made telephonically, as was the case here, *see Mulch Mfg. Inc. v. Advanced Polymer Solutions, LLC*, 947 F. Supp. 2d 841, 855 (S.D. Ohio 2013); *Benchmark Elecs. Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 728 (5th Cir. 2003), but 148(2)(c) still points to Idaho.

Section 148(2)(d) is a mixed bag. It considers the *domicil, residence, nationality, place of incorporation, and place of business of the parties*. Butler moved back to Montana six years before he lost his eye and lived there nearly nine years by the time he filed suit. He was traveling to Idaho once or twice per month as of the time he was injured, but he was living and working in Montana, received his mail in Montana, and had a Montana driver's license. On the other hand, Intermountain is an Idaho corporation. Its principle place of business is in Idaho but it also has offices in Montana. North American is a New Hampshire corporation owned by a publicly traded Swiss entity. Section 148(2)(d) does not weigh in favor of either state.

Section 148(2)(e) looks to the *place where the tangible thing that is the*

5

*subject of the misrepresentation claim is located* and section 148(2)(f) considers

*the place where plaintiff was to render performance under a contract that he*

*alleges he was induced to enter by defendant's false representations.* To the extent

there is a "tangible thing" that is the subject of this misrepresentation claim, it is

the parties' written settlement agreement, which was sent to Butler in Montana and

executed by him there. The required performance was Butler's release of all

claims arising from the injury, which was accomplished when he signed the

settlement agreement in Montana.

**Restatement Section 145**

When the district court considered the general factors for tort claims in

section 145, it concluded that section 145(2)(d) favored application of Idaho law

because "the relationship between the parties was centered in Idaho." But section

145's general considerations do not trump the more specific provisions for

misrepresentation claims set out in Restatement section 148, and, even if they did,

the court erred in its application of section 145 because it did not consider the

relationship between the parties to this suit. Instead, the court's order switched its

focus to the relationship between the parties who would have been named if Butler

had filed products liability or personal injury claims—Butler, the net manufacturer,

and the entities comprising the net's wholesale and retail distribution chain. The

court's order makes this plain; it stated: "A significant amount of the relevant conduct concerning Butler's underlying injury occurred in Idaho: (1) the cargo net was offered for sale in Idaho; (2) Butler purchased the net in Idaho; (3) Butler was injured in the course of using the net in Idaho." These facts have nothing to do with Butler's claims against North American and Intermountain. Properly applied, section 145 does not favor Idaho law or Montana law because Butler's negotiations with Hoffman were not centered in either state; the two met once in Idaho, they talked about the claim in subsequent telephone calls conducted across Idaho-Montana state lines, and they memorialized their deal in a release signed by Butler in Montana.

**Restatement Section 6**

The district court also considered the general conflict principles set out in section 6(2) of the Restatement, but in doing so it gave no weight to the parties' expectations because, it reasoned, "tort cases generally do not involve justified expectations." The district court cited to *Phillips*, but that case does not support the court's conclusion. *Phillips* was a products liability case arising from a tragic highway collision. Three Montana residents died and another sustained personal injuries while driving through Kansas in a General Motors pickup sold in North Carolina. *Id.* at 1005. Sorting through the possibilities in its choice-of-law

7

analysis, the Montana court recognized that automobile manufacturers "presumably give advance thought to the legal consequences of their conduct," but it held that "any expectation General Motors had that a dispute concerning this pickup would be governed by North Carolina's [law] would not be justified." *Id.* at 1013–14. The court ultimately applied Montana law, largely because the accident implicated Montana's interest in protecting its residents and deterring conduct deemed wrongful in Montana more than the policies of the other relevant states. *Id*. at 1015.

Some tort claims, like auto accidents, result from split-second errors in judgment and do not implicate concerns regarding the parties' reasonable expectations. But *Phillips* recognized that justified expectations are indeed a factor to be considered in cases like Butler's, where parties would "presumably give advance thought to the legal consequences of their conduct." *Id.* at 1013. There can be no question that Butler and Hoffman gave advance thought to their actions; they discussed the consequences of Butler's eye injury for months.

Butler's expectation that Montana law would apply was reasonable. He is a Montana resident who filed claims in Montana state court alleging that professionals experienced in claims handling, licensed to do business in both states, engaged in misconduct during the negotiation and settlement of the claims

arising from the loss of his eye. Except for one meeting, all the misconduct Butler complains of was directed at him in Montana. The district court erred by setting aside any consideration of the parties' reasonable expectations simply because Butler's claim sounded in tort.

The district court erred when it decided that Idaho has the most significant relationship to Butler's claims. If prospective parties to a personal injury action that Butler could have filed—but did not—are not conflated with the parties he actually sued, and if the entirety of the Restatement and its commentary are considered, Montana has the most significant relationship to the occurrence at the center of Butler's complaint.

For these reasons, I respectfully dissent.