920 P.2d 67

**Brian R. ZIMMERMAN, Theresa Tarp Zimmerman, Paul Tarp and Melba Stopello, Plaintiffs–Appellants,**

v.

**VOLKSWAGEN OF AMERICA, INC., and Volkswagen Aktiengesellschaft, Defendants–Respondents.**

No. 20993.

Supreme Court of Idaho, Boise, March 1996 Term.

May 24, 1996.

Rehearing Denied Aug. 8, 1996.

Martin, Chapman, Schild & Lassaw, Boise, John G. Phillip & Assoc., Chicago, Illinois, for appellants. John F. Klebba, argued.

Evans Keane, Boise, for respondents. Bruce C. Jones, argued.

TROUT, Justice.

This is a products liability action brought against Volkswagen of America, Inc., and Volkswagen Aktiengesellschaft (Volkswagen) by the family of Dorothy Zimmerman (the Zimmermans) alleging that the restraint system used in Dorothy Zimmerman's (Dorothy) vehicle was defective and a substantial factor in causing her death.

## I.

### BACKGROUND

On March 24, 1989, Dorothy was driving her 1987 Volkswagen Golf east on Franklin Road. While in the process of making a left turn onto Ten Mile Road, Dorothy was struck by a pickup truck which was traveling westbound on Franklin Road. After the collision Dorothy was alert and oriented but complained of left knee pain to the emergency medical technician responding to the accident. Dorothy was then transported by ambulance to St. Alphonsus Hospital where she spoke with Dr. Austin Cushman. Dorothy told Dr. Cushman that she did not recall striking anything within the automobile during the accident and thought that she was relatively uninjured although she did note some pain above her waist on the right side. Shortly after speaking with Dr. Cushman, Dorothy became unresponsive and later died from what Dr. Cushman concluded was an internal hemorrhage caused by a liver laceration. In Dr. Cushman's opinion, Dorothy's liver was torn from the inside outward when the restraint system in Dorothy's car caused her body to rapidly decelerate immediately after the collision and the entire force of that deceleration was imparted to her abdomen by the seat belt.

The Zimmermans' complaint alleged causes of action against Volkswagen for strict products liability, negligence, and breach of warranty and included a claim for hedonic damages. The district court dismissed the Zimmermans' claim for hedonic damages pursuant to Volkswagen's motion and the breach of warranty claim was dismissed by stipulation. The court subsequently granted Volkswagen's motion for summary judgment finding that the Zimmermans' claims against Volkswagen were both expressly and impliedly preempted by applicable provisions of the National Traffic and Motor Vehicle Safe-

ty Act, 49 U.S.C. §§ 30101–169 (formerly codified at 15 U.S.C. §§ 1381–1431 (1982)) (Safety Act). The district court also ordered that Volkswagen be awarded certain of its costs pursuant to I.R.C.P. 54(d)(1).

## II.

## STANDARD OF REVIEW

■ A motion for summary judgment must be granted by a district court if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). A review by this Court of a district court's ruling on a motion for summary judgment is the same as that required of the district court when it rules on the motion. *Curtis v. Firth*, 123 Idaho 598, 610, 850 P.2d 749, 761 (1993). The Court liberally construes the record in the light most favorable to the party opposing the motion, drawing all inferences and conclusions in that party's favor, and if reasonable people could reach different conclusions or draw conflicting inferences then an order granting summary judgment must be reversed. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994).

■ If the defendant moves for summary judgment on the basis that no genuine issue of material fact exists with regard to an element of the plaintiff's case, the plaintiff must establish the existence of an issue of fact regarding that element. *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 272–73, 869 P.2d 1365, 1367–68 (1994). In order to forestall summary judgment in that case, the plaintiff must do more than present a scintilla of evidence, and merely raising the "slightest doubt" as to the facts is not sufficient to create a genuine issue. *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 871, 452 P.2d 362, 368 (1969); *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991).

## III.

## PREEMPTION

■ The manufacturer of a motor vehicle is under a duty to design and manufacture its products so as to eliminate unreasonable risks of foreseeable injuries that may occur if the vehicle is involved in a collision or other impact. *Farmer v. International Harvester Co.*, 97 Idaho 742, 751, 553 P.2d 1306, 1315 (1976). Strict liability in tort is imposed on the manufacturer for its failure to produce a crashworthy vehicle. *Shields v. Morton Chem. Co.*, 95 Idaho 674, 676–77, 518 P.2d 857, 859–60 (1974) (quoting The Restatement of the Law, Torts 2d, § 402A (1965)). In "second collision" cases the injured occupant of the automobile bears the burden of presenting sufficient evidence for the trier of fact to reasonably find that the vehicle was defective and that the defect enhanced or intensified the injuries sustained in the accident. *Johnson v. Pischke*, 108 Idaho 397, 403, 700 P.2d 19, 25 (1985); *Curtis v. DeAtley*, 104 Idaho 787, 790, 663 P.2d 1089, 1092 (1983) (citing *Rindlisbaker v. Wilson*, 95 Idaho 752, 519 P.2d 421 (1974)); *Fouche v. Chrysler Motors Corp.*, 103 Idaho 249, 253–54, 646 P.2d 1020, 1024–25 (Ct.App. 1982).

The restraint system used in Dorothy's Golf, identified by its acronym VWRA, is a "passive" system requiring no action on the part of the occupant to actuate it. The VWRA system consists, for the most part, of a shoulder belt which is anchored to the seat on the inboard side and to the door on the outboard side and includes a padded knee bar under the dash and a specially designed seat to minimize submarining. There is no lap belt and, when the door closes, the shoulder belt is automatically positioned across the occupant's chest.

The VWRA system was designed to comply with Federal Motor Vehicle Safety Standard 208 (FMVSS 208), 49 C.F.R. § 571.208 (1986), a regulation promulgated by the National Highway Traffic Safety Administration (NHTSA), an agency within the Department of Transportation, under the auspices of the Safety Act. This regulation specified motor vehicle performance requirements for the protection of vehicle occupants in crashes and allowed car manufacturers the choice of selecting one of three options for satisfying

the federal performance standards, *i.e.* either complete passive protection, passive restraints, or lap and shoulder belt protection systems with belt warnings. 49 C.F.R. § 571.208. The VWRA was designed to comply with the second option and was intended to function so that in a collision the driver's knees would contact the padded knee bar under the dash to limit motion of the lower portion of the driver's body, and the shoulder belt would prevent the driver's head from hitting the windshield. In their complaint, the Zimmermans do not allege that the VWRA failed to operate as it was designed to during the accident and they concede that the VWRA fully complied with the performance standards set forth in FMVSS 208. The only defect in the VWRA the Zimmermans could definitively point to was Volkswagen's failure to also include a lap belt.

In determining whether Volkswagen can be held liable for not including a lap belt in Dorothy's Golf, a threshold issue is whether that particular claim is preempted by the Safety Act. The Safety Act provides that the NHTSA shall promulgate safety standards that manufacturers are required to incorporate into their products. 15 U.S.C. § 1392(a). Section 1392 also mandates uniformity in the development of safety standards through the Safety Act's express exemption provision:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

15 U.S.C. § 1392(d).

FMVSS 208, as it read when Dorothy's Golf was manufactured, required that all passenger cars possess one of three types of crash protection: (1) complete passive protection for all crashes; (2) passive restraints for head-on collisions; or (3) manual three-point seat belts with belt warnings. 49 C.F.R. § 571.208, S4.1.2.1–3. FMVSS 208 also provided that a manufacturer could install an automatic belt "that requires no action by vehicle occupants ... to meet the crash protection of any option under S4 and in place of any seat belt assembly otherwise required by that option." 49 C.F.R. § 571.208, S4.5.3.

■ It is well settled that any state law which conflicts with federal law is "without effect" as provided under the Supremacy Clause of the United States Constitution.[1] *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 515–16, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981) and citing *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819)). In some cases, state law is expressly preempted by the language of a federal statute. *Id.*

■ As the Zimmermans have conceded, the VWRA fully complied with the performance requirements of FMVSS 208. The issue then is whether Volkswagen can be held liable for selecting one of the options clearly available to it under the regulations promulgated by the NHTSA which do not require a lap belt. The Zimmermans contend that their claims are not expressly preempted because section 1392(d), by its terms, only preempts positive enactments by a "State or political subdivision of a State" and not common law claims. As the United States Supreme Court in *Cipollone* noted, however, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief." *Id.* at 521, 112 S.Ct. at 2620 (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959)). More specifically, the Supreme Court has discussed the preemptive effect of section 1392(d) of the Safety Act on state common law claims. *Freightliner v.*

1. "This Constitution, and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

*Myrick,* —— U.S. ——, ——, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995). In *Freightliner,* the Court refused to expressly preempt tort causes of action brought against various manufacturers of trucks and trailers for their failure to equip these vehicles with anti-lock brakes. The Court noted that where there was "no express federal standard addressing" a particular aspect of performance then a state law claim may proceed. —— U.S. at ——, 115 S.Ct. at 1487. Implicit in the Court's rejection of express preemption in *Freightliner* is its recognition of the preemptive effect of section 1392(d) in those cases where a standard specifically addresses the aspect of performance in question. In this action there exists a federal standard that directly addresses the performance requirements of automobile restraint systems to protect vehicle occupants during crashes. Hence we find the distinction advocated by the Zimmermans to be nonpersuasive and we hold, instead, that the claims against Volkswagen for failure to include a lap belt with the VWRA are preempted by the express provisions of the Safety Act. *See also Boyle v. Chrysler Corp.,* 177 Wis.2d 207, 501 N.W.2d 865, 869 (App.1993) ("[The Safety Act] explicitly preempts any state motor vehicle safety standards, including those established through the imposition of common-law liability, that are in conflict with the federal standards."); *Vanover v. Ford Motor Co.,* 632 F.Supp. 1095, 1096 (E.D.Mo.1986) (section 1392(d) expressly preempts state tort law).

Because we find the Zimmermans' claims to be expressly preempted by the Safety Act, we do not address Volkswagen's contention that these claims are impliedly preempted as well.

■■■ The Zimmermans maintain, however, that Congress specifically intended that their claims should survive by including within the Safety Act a section which provides:

Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law.

15 U.S.C. § 1397(c). General savings clauses cannot be read, however, to permit common law actions that undermine federal policy.

*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383–85, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). Savings clauses of this type are designed not to preserve common law claims that conflict with federal law but only to preserve state law causes of action that do not disrupt the federal statutory scheme. *Chicago and N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 328, 101 S.Ct. 1124, 1135, 67 L.Ed.2d 258 (1981). In this case, the Zimmermans' claims are expressly preempted by the Safety Act and cannot be preserved by the Act's general savings clause.

The Zimmermans argue that notwithstanding the preemptive effect of the Safety Act and failure of the savings clause to preserve their claims, their action against Volkswagen should be allowed to proceed. They maintain before this Court that the design of the VWRA is defective not only because it failed to provide an active lap belt but also because its effectiveness is dependent upon the size of the occupant and the direction of the impact. Thus they now argue that the design defect in the passive restraint system consists of more than simply Volkswagen's failure to select a different option under FMVSS 208. It is debatable whether this argument was actually made to the district court, but more importantly, the basis for this claim is not supported by the evidence presented to the district court. One of the Zimmermans' experts, Ted Mitchell, opined early in his deposition that the VWRA was defective in design because it could have used an active lap belt system. Mitchell also criticized the VWRA's design as dependent upon the size of the occupant and the direction of the impact without providing the occupant with a sufficient warning. He later backed away from this particular position, however, noting:

in my opinion the system is very dependent upon size, and anything varying from that ideal situation makes it more likely to cause injury, but I don't know whether that crosses the line of defective or not, and that would be based upon what Dr. Ward's opinion is.

Dr. Ward noted in her deposition that indeed, the VWRA was dependent upon the occupant's size and the direction of impact but she never asserted that it was defective for those particular reasons stating only

"that the [VWRA] system was defective because of the absence of even an active lap belt."

 It thus appears that although both experts were in agreement that the VWRA was defective for not including a lap belt, neither expert posited an opinion that the system was defective for any other reason. Thus, although there is certainly substantial evidence to show that the VWRA was the actual cause of Dorothy's injuries, that fact alone does not automatically indicate liability on Volkswagen's part.

> [S]trict liability is not absolute liability because a manufacturer is not an insurer or guarantor that no one will be injured in using his product. The manufacturer is under a duty to produce a product which is free from unreasonable dangerous conditions.

*Sun Valley Airlines, Inc. v. Avco–Lycoming Corp.*, 411 F.Supp. 598, 602 (D.Idaho 1976). Even in strict liability cases, then, the plaintiff must first proffer evidence of a defect in a product before liability against the manufacturer can be found and the only defect in the VWRA that the Zimmermans' experts can point to is the system's failure to include a lap belt. As we have discussed above, however, this claim is expressly preempted by the provisions of the Safety Act and, for that reason, the district court's grant of Volkswagen's motion for summary judgment is affirmed.

## IV.

## ASSESSMENT OF COSTS

The Zimmermans contend that the district court erred in assessing against them certain of Volkswagen's costs, arguing that the defendant is not entitled to costs under I.R.C.P. 68 or 54(d)(1)(D) and that even costs recoverable as of right under I.R.C.P. 54(d)(1)(C) should be disallowed. Because the district court expressly declined to award Volkswagen its costs under I.R.C.P. 68, we address only the award of costs to Volkswagen under the provisions of I.R.C.P. 54(d)(1).

 An award of costs under I.R.C.P. 54(d)(1), as the rule itself provides, is committed to the sound discretion of the district court. *See Durrant v. Christensen*, 117 Idaho 70, 72, 785 P.2d 634, 636 (1990) (citing *Gilbert v. City of Caldwell*, 112 Idaho 386, 732 P.2d 355 (Ct.App.1987)). The burden is on the party opposing the award to demonstrate an abuse of the district court's discretion and, "absent an abuse of discretion, the district court's award of costs will be upheld." *Id.* (citing *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982); *Martsch v. Nelson*, 109 Idaho 95, 705 P.2d 1050 (Ct.App.1985)).

 When an appellate court reviews the district court's exercise of discretion, the appellate court should determine: (1) whether the trial court correctly perceived the issue as discretionary; (2) whether the trial court acted within the boundaries of its discretion and consistent with the applicable legal standards; and (3) whether the trial court reached its determination through an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989) (quoting *Associates Northwest, Inc. v. Beets*, 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct.App.1987)). At oral argument the trial court reviewed the subsections of I.R.C.P. 54(d)(1) and accurately perceived that the assessment of costs awarded to the prevailing party under both subsections (C) and (D) of Rule 54(d)(1) is discretionary with the court. In determining what costs should be assessed under each subsection, the district court also correctly operated within the boundaries of its discretion as defined within the rule.

 The Zimmermans contend, however, that the district court erred in awarding costs to Volkswagen as a matter of right under subsection (C), arguing that these costs were unreasonably incurred and could have been avoided if Volkswagen had brought its motion for summary judgment at an earlier time and before it incurred most of the claimed expenses. Volkswagen should not be penalized, however, for making a tactical decision in determining when a motion for summary judgment should best be filed within the time frame allowed for bringing such a motion. In addition, the depositions Volkswagen obtained prior to bringing its motion certainly clarified upon what theory the Zimmermans' claims were based and substantial-

ly narrowed the issues for resolution. More importantly, however, Volkswagen obviously could not have known that its motion for summary judgment, whenever the motion was filed, would be granted, and its decision to prepare for an eventual trial if its motion were denied could not be considered unreasonable.

 In determining whether the district court reached its conclusion to award costs through an exercise of reason it is inappropriate for us, just as it was for the district court, to utilize hindsight analysis against the prevailing party. Although Volkswagen prevailed in its motion for summary judgment, it could not have known that fact early in this action and thereby avoided all costs not absolutely necessary to the motion. We find, therefore, that the district court's award of Volkswagen's costs as a matter of right under I.R.C.P. 54(d)(1)(C) was determined through an act of reason and we affirm that order.

With regard to the discretionary fees under subsection (D), the district court awarded Volkswagen an amount equal to one-third of the fees charged by the expert witnesses secured by Volkswagen that exceeded the $500 per day allowable under subsection (C). The district court found that only this portion of the expert witness fees was necessary, exceptional, and reasonable. The court also awarded Volkswagen the vehicle storage fees it incurred as well as nominal videography fees. The award of these discretionary costs to Volkswagen under I.R.C.P. 54(d)(1)(D) appears also to have been reached through an exercise of reason and is similarly affirmed.

## V.

### CONCLUSION

For the reasons stated above, we affirm the district court's order granting Volkswagen's motion for summary judgment. Since we have affirmed summary judgment in favor of Volkswagen, it is unnecessary for us to address the Zimmermans' other issue relating to their requested award of hedonic damages. Finally, we affirm the district court's award of certain of Volkswagen's costs in litigating this case.

McDEVITT, C.J., SILAK and SCHROEDER, JJ., and SCHILLING, J. Pro Tem., concur.