162 P.3d 758

**In the Matter of Vondean Renee KAREL, a Registered Broker–Dealer Agent Under the Uniform Securities Act (2004.).**

**Vondean Renee Karel, Petitioner–Appellant,**

**v.**

**State of Idaho, Department of Finance, Respondent.**

**No. 33191.**

Supreme Court of Idaho, Boise, May 2007 Term.

June 27, 2007.

Givens Pursley, LLP, Boise, for Appellant. David R. Lombardi argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for Respondent. Joseph B. Jones argued.

TROUT, Justice.

Vondean Renee Karel appeals from a district court decision affirming a final order by the Department of Finance (Department), which resulted in the suspension of Karel's

license as a securities agent. The Department suspended her license for a six-month period based on its finding that Karel violated Idaho Code section 30–14–411(d) by refusing to provide records requested during a 2005 audit and investigation.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Karel has been licensed by the Department as a securities agent since 1998. She worked at Morgan Stanley Dean Witter until February 2002, when she and her father, Milt Erhart, joined Wachovia Securities Financial Network. Both were licensed to sell securities and they conducted business under the name of "Milt Erhart & Associates." She and her father had combined accounts and shared their clients until March of 2005, when Milt Erhart's registration as a securities dealer was terminated. Thereafter, Karel became affiliated, as an agent, with Summit Brokerage Services, Inc. (Summit), but continued to work out of her father's office and to conduct business under the Milt Erhart & Associates name. Karel's father remained in the office, where he conducted a real estate business.

On June 7, 2005, based upon a suspicion that Milt Erhart was conducting securities business with Karel's clients despite being an unregistered agent, the Department investigators made an unannounced visit to Karel's office. The investigators requested that Karel produce the following documents: a list of clients with their addresses and telephone numbers; financial records for Milt Erhart and Associates; and Karel's personal bank account records into which she deposited her commission checks from Summit. Although Karel had these documents, she refused to give them to the investigators, based on her belief that the Department did not have the authority to request to inspect that information. As a result of her refusal to turn over the documents, the Department suspended her securities license for six months.

Karel filed an appeal, contending the Department did not have the authority to audit or inspect the records they had requested, and therefore, her license should not have been suspended. The matter was assigned to a hearing officer who took testimony and made detailed findings about the business being operated by Karel in conjunction with her father. The hearing officer concluded that the Department's request for the documents was reasonable pursuant to I.C. § 30–14–411(d), as the documents were directly related to the Department's suspicions that Karel was improperly engaged in the securities business with an unlicensed individual. Therefore, the hearing officer recommended that the suspension of Karel's license by the Department be upheld. Karel then sought judicial review in the district court. The district judge concluded the hearing officer's findings and conclusions were correct, and therefore, he affirmed the Department. Karel now appeals the district court's decision.

## II.

## STANDARD OF REVIEW

■ "In an appeal from the district court's decision, where it was acting in its appellate capacity in a review under the APA [Administrative Procedure Act], this Court reviews the agency record independently of the district court's decision." *Haw v. Idaho State Bd. of Med.*, 140 Idaho 152, 157, 90 P.3d 902, 907 (2004). Pursuant to I.C. § 67–5279, this Court does not substitute its judgment for that of the administrative agency as to the weight of evidence, but defers to the agency's findings of fact unless clearly erroneous. The agency's order may be overturned only where it: a) violates statutory or constitutional provisions; b) exceeds the agency's statutory authority; c) was made upon unlawful procedure; d) is not supported by substantial evidence in the record as a whole; or e) is arbitrary, capricious, or an abuse of discretion.

## III.

## DISCUSSION

### A. Department's authority to request the documents

Karel argues the Department had no authority to request the records it did because

the pertinent statutes did not list those items as records Karel was required to maintain and provide for inspection. While Karel acknowledges the Department does have the statutory authority to conduct an audit or inspection, she argues that the inspection must be reasonable. She asserts a reasonable inspection must be limited to those records which the broker-dealer (in this case, Summit) is required by statute to maintain. If the investigation is not so limited, then Karel argues the statutes are unconstitutionally vague and violate her right to adequate notice of her recordkeeping responsibilities.

We begin our analysis with I.C. § 30–14–411(d) which states in pertinent part:

The records of ... every broker-dealer, agent ... are subject to such reasonable periodic, special or other audits or inspections ... as the administrator considers necessary or appropriate in the public interest and for the protection of investors. An audit or inspection may be made at any time and without prior notice. The administrator may copy, and may remove for audit or inspection copies of, all records the administrator reasonably considers necessary or appropriate to conduct the audit or inspection.

■ In support of her contention that any inspection must be limited in scope and specific in its reach, Karel cites to *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). In *Burger*, the appellant, Burger, contested the legality of an inspection of his business that occurred pursuant to New York Vehicle & Traffic Law § 415–a5, which allows the inspection of records during regular business hours "which are subject to the record keeping requirements of this section and which are on the premises." Burger argued that the evidence obtained should be suppressed because the inspection was not limited in scope. The United States Supreme Court disagreed and ruled that § 415–a5 satisfied the three criteria of a "reasonable" warrantless inspection under the Fourth Amendment. The Supreme Court noted that an owner or operator of commercial premises in a closely regulated industry has a reduced expectation of privacy, and therefore, may be subject to a warrantless inspection of such premises. *Burger*, 482 U.S. at 702, 107 S.Ct. at 2643, 96 L.Ed.2d at 613. This warrantless inspection will be deemed reasonable if three criteria are met. *Id.* at 702, 107 S.Ct. at 2644, 96 L.Ed.2d at 613.

First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made. *Id.* Second, the inspection must be necessary to further the regulatory scheme; and last, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officer. *Id.* In reference to the third criterion, the Supreme Court found that the statute provided a constitutionally adequate substitute for a warrant because it informed the business operators that inspections would be made on a regular basis, and thus, the operator would know that inspections would not constitute discretionary acts, but would be conducted pursuant to the statute. *Burger*, 482 U.S. at 711, 107 S.Ct. at 2648, 96 L.Ed.2d at 619. Further, the Court held, the statute placed adequate limits upon the inspecting officers by limiting the hours of inspection and what could be inspected, and therefore, the search was constitutional. *Burger*, 482 U.S. at 711–12, 107 S.Ct. at 2648, 96 L.Ed.2d at 619–20.

■ Karel acknowledges that the first and second criteria are satisfied by I.C. § 30–14–411(d) and that the Department was authorized by the statute to conduct a "reasonable ... audit or inspection" of her office. Karel argues, however, that the inspection was not reasonable because it did not limit the discretion of the investigating officers. As discussed above, in order to be constitutional, the statute in question must provide an adequate substitute for a warrant in terms of the certainty and regularity of its application by first, advising the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and second, the statute must limit the discretion of the inspecting officers. Specifically, Karel contends the Department, in con-

ducting an inspection pursuant to I.C. § 30–14–411(d), must limit its inspection to records that are required to be made or maintained pursuant to I.C. § 30–14–411(c); otherwise, the statute is unconstitutional because it does not limit the Department's discretion as required by *Burger*.

◼ A party challenging a statute on constitutional grounds bears the burden of proving the statute is unconstitutional and must overcome a *strong presumption of validity*. *State v. Korsen*, 138 Idaho 706, 711, 69 P.3d 126, 131 (2003). A statute must give adequate notice to people of the conduct it proscribes. *Korsen*, 138 Idaho at 712, 69 P.3d at 132. In interpreting a statute, an appellate court is obligated to seek an interpretation that upholds its constitutionality. *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). A statute should not be held void for uncertainty if any practical interpretation can be given it. *Id.*

◼ As noted above, I.C. § 30–14–411(d) simply permits the Department to conduct a reasonable audit and inspection of "all records the administrator reasonably considers necessary or appropriate to conduct the audit or inspection." Looking solely at this language, it is difficult to see how this in any way limits the discretion of the inspecting officials. No guidance is given about what records may be demanded other than the circuitous statement that it must be those records necessary to the conduct of the inspection; i.e. the official may demand to inspect those records he deems necessary to his inspection. Immediately preceding this section is I.C § 30–14–411(c) entitled "Recordkeeping." That subsection sets forth recordkeeping requirements for broker-dealers and investment advisers, which include accounts, correspondence, books and other records required by rules adopted by the Department. During oral argument, the Department's attorney candidly acknowledged that the records demanded of Karel are not among those required to be kept pursuant to subsection (c). While the recordkeeping obligation of subsection (c) is placed on broker-dealers, not agents like Karel, subsection (d) includes securities agents within its description of persons who are subject to the De-

partment's audit and inspection requirements. The logical interpretation of these two subsections is that, while broker-dealers are the ones on whom the recordkeeping obligation is placed, securities agents like Karel have an obligation to make those records available upon reasonable request by the Department. It makes no sense to have detailed recordkeeping responsibilities on broker-dealers, but to allow the Department to demand virtually unlimited records (those "necessary . . . to conduct the audit"), from a securities agent. Thus, we agree with Karel that the records to be made available for audit and inspection are those required to be maintained in subsection (c).

◼ With that interpretation, I.C. § 30–14–411(d) is a constitutionally adequate substitute for a warrant as required by *Burger*. First, the statute informs the securities business broker-dealer or agent that he or she is "subject to such reasonable periodic, special or other audits or inspections . . . within or without this state, as the administrator considers necessary or appropriate in the public interest and time and without prior notice." Thus, similar to § 415–a5 in *Burger*, the statute informs the dealers and agents that inspections to which they are subject do not constitute discretionary acts by a government official, but are conducted pursuant to the statute. Further, we agree with Karel that the statute limits any inspections pursuant to subsection (d) to documents that are subject to the recordkeeping requirements in subsection (c). In other words, a search is only "reasonable" pursuant to I.C. § 30–14–411(d) if it is limited to documents that the law requires broker-dealers or registered investment advisors to make or maintain pursuant to I.C. § 30–14–411(c). Thus, even though Karel was not personally required to make or maintain the records outlined in subsection (c), she was required to surrender those documents for inspection pursuant to I.C. § 30–14–411(d).

◼ In this case, the Department's inspection was prompted by information it had received that suggested Karel was allowing her father to conduct a securities business with her clients, despite being an unregis-

tered agent. While there appear to be other statutes which would permit the Department to obtain the information it sought, it cannot do so under the guise of a normal audit without limiting the request as indicated above. Therefore, the Department did not have the authority to request those documents pursuant to I.C. § 30–14–411(d).

In this case, the district court did not interpret a "reasonable" audit or inspection to be limited in scope, and therefore, it was in error. As a result, Karel's securities license should not have been suspended. Given our interpretation of these statutes, we need not address Karel's other argument that the statute is unconstitutionally vague.

### B. Attorney's fees on appeal

■ Karel seeks attorney's fees on appeal pursuant to I.C. § 12–117, arguing that the Department had no reasonable basis in fact or law for its interpretation of I.C. § 30–14–411. The Department requests attorney's fees and costs pursuant to I.A.R. 41 and I.C. §§ 12–121 and 12–117, arguing that Karel has brought this appeal frivolously, unreasonably and without foundation. Given that this appeal presents a matter of first impression for this Court, we find that the appeal was neither pursued nor defended frivolously, and thus, both parties are denied attorney's fees on appeal.

### IV.

### CONCLUSION

We hold that the Department of Finance did not have the authority to request the documents it did from Karel pursuant to I.C. § 30–14–411(d), as the documents were not subject to the recordkeeping requirements of I.C. § 30–14–411(c). Karel's securities license should not have been suspended as a result of her refusal to produce the records requested by the Department for inspection, and we remand this matter to the Department for further action in accordance with this opinion. We award costs on appeal to Karel.

Chief Justice SCHROEDER, and Justices EISMANN and BURDICK concur.

JONES, J., concurring in part and dissenting in part.

I concur in the Court's opinion in all respects except for the conclusion that the Department did not have the authority under I.C. § 30–14–411(d) to request Karel's client list. The Department determined that when the investigators requested the client list, Karel either had a client list or could have produced one through her computerized records. The client records were required to be maintained under I.C. § 30–14–411(c) and Karel was obligated to surrender them upon the Department's request. While it is true the Department conceded these records were not required to be maintained, a review of the applicable provisions indicates the Department conceded too much.

The Court correctly holds that securities agents are obligated to make available to the Department upon its reasonable request those records within their possession which their broker-dealer is required by law to maintain. Broker-dealers are required to maintain a wide array of records, mostly dealing with client (customer) contracts, accounts, and trade transactions. I.C. § 30–14–411(c)(1) requires that broker-dealers (which does not include agents) make and maintain such records as are required pursuant to rules adopted by the Department. The Department's Rule 88 (IDAPA 12.01.08.088.01) requires broker-dealers to make and maintain records compliant with SEC rules found at 17 C.F.R. §§ 240.17a–3, 17a–4, 15g–9 and 15c2–11. Those SEC rules require maintenance of records primarily related to customers, including customer contracts, their personal information and their security transactions. For example, 17 C.F.R. § 240.17a–3(a)(17)(i)(A) requires maintenance of account records including the names of customers who are natural persons, together with each customer's tax identification number, address, telephone number, date of birth, employment status, annual income, net worth and investment objectives. A current record of this and other information required by the SEC rules must be maintained and kept current for each office of the broker-dealer and is subject to exami-

nation by the SEC at any time during business hours. 17 C.F.R. 240.17a–3(b).

Based on the SEC rules, brokers-dealers have a strong incentive to carefully maintain customer records. Additionally, those records are the lifeblood of the broker-dealer's business and contractual relationships with agents generally reflect that the customer records are the property of the broker-dealer, rather than the agent. The agreement between Summit and Karel specifies, "It is understood and agreed that all books and records pertaining to Summit customers are the property of Summit." Karel further agreed that Summit had the sole discretion to conduct unannounced examinations and audits of these and other records related to her business.

One of the items that the Department sought to obtain from Karel when its agents made the unannounced visit to Karel's office on June 7, 2005, was a list of clients to include their addresses and telephone numbers. Karel was required to surrender such information to the Department. The parties dispute what customer information was available and what should have been turned over. The Department contends Karel acknowledged she had a list of customers but refused to turn it over. Karel contends that she turned over information pertaining to her customers but that she was not obligated to furnish a list of the customers.

We need not try to reconcile the conflict in the evidence because the hearing officer addressed the matter in her findings, which the Department adopted in its order. The hearing officer found that Karel acknowledged she had the documents requested by the Department, including the client list, but declined to turn them over. The hearing officer went on to find:

> With respect to production of the client list, Ms. Karel testified she understood the Department wanted a list of anyone currently doing investment business with Summit. She testified that, in June, 2005, she did not have a separate client list and indicated she did not know how to generate a client list from the ILX system. Her hearing testimony conflicts with her admissions to the Department investigators in

which she admitted she had a client list, but refused to provide it. Further, Exhibits 10 and 11, produced by Ms. Karel on June 7, 2005, and June 15, 2005, indicate through her computerized records she had the capability of producing lists of clients. She testified that, in order to provide a current client list, she would need to update her records and eliminate old clients. However, Ms. Karel never explained that to the investigators. Instead, she refused to provide a list.

Thus, the hearing officer found that Karel either had a client list at the time it was requested or that she had the capability of producing one at that time. This finding, which was adopted by the Department, is supported by substantial, albeit conflicting, evidence and should be sustained. Karel's refusal to provide the customer list was a violation of her obligations under I.C. § 30–14–411(d).

At oral argument, Karel's counsel acknowledged that Karel had a list that she declined to provide the investigators but contended it was not information required to be maintained under I.C. § 30–14–411(c). According to counsel, the client list was not updated and not complete. The list included the names of clients from her former broker-dealer, Wachovia, and was being used by Karel as a "working list". This contention provides no relief to Karel, however. Wachovia was a broker-dealer and the same record maintenance and production requirements pertained to Wachovia, as applied to Summit. The pertinent SEC rule requires customer information to be maintained for at least six years. 17 C.F.R. 240.17a–4. Whether the customer information requested by the Department pertained to Karel's customers under either broker-dealer, she was obligated to furnish the information to the Department under I.C. § 30–14–411(d).

The same does not apply to the bank account records, as the Court holds. The requirement in I.C. § 30–14–411(c) to maintain records applies to broker-dealers, which does not include agents. While a broker-dealer is required to maintain its check books, bank statements, canceled checks and cash reconciliations in its records, pursuant to 17 C.F.R.

§ 240.17a–4(b)(2), these are not the banking records that the Department sought. If the Department wished to obtain Karel's personal checking account records or the records of a checking apparently owned by her father (and upon which she was able to draw checks), the Department should have sought those records pursuant to its subpoena power. I.C. § 30–14–602. Therefore, I concur in the Court's determination regarding the banking records but dissent with regard to the determination pertaining to customer information.